# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOSHUA DAVID LEFTWICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:18-cv-00008** |
| **v.** | ) | **Judge Crenshaw/ Frensley** |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Plaintiff has filed an accompanying Memorandum of Law. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on October 7,

1

2016,[1] alleging that he had been disabled since January 15, 2015, due to hepatitis C, social anxiety, depression, and "limited use of left arm." *See, e.g.,* Docket No. 11, Attachment ("TR"), pp. 155-63, 183. Plaintiff's application was denied both initially (TR 74) and upon reconsideration (TR 94). Plaintiff subsequently requested (TR 110-12) and received (TR 35) a hearing. Plaintiff's hearing was conducted on October 6, 2017, by Administrative Law Judge ("ALJ") Todd Spangler. *Id.* Plaintiff and Vocational Expert, Rodney Caldwell, appeared and testified. *Id.*

On October 30, 2017, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 16-29. Specifically, the ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since September 15, 2016, the application date (20 CFR 416.971 *et seq.*).
2. The claimant has the following severe impairments: degenerative disc disease; hypertension; anxiety; depression; and substance abuse addiction disorder, in partial remission (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a). He can lift up to ten pounds occasionally and sit, stand and walk for six hours each in an eight hour workday. The claimant is limited to no more than occasional pushing and pulling with his left upper extremity. He can frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; frequently

---

[1] Plaintiff protectively filed his application on September 15, 2016. TR 74, 94.

balance, kneel and crouch; and occasionally stoop and crawl. He cannot reach overhead reaching [*sic*] with his left upper extremity and can no more than frequently handle and finger with his left upper extremity. The claimant can perform simple and detailed tasks with no more than occasional contact with coworker [*sic*], supervisors and the public in a workplace where changes are introduced infrequently and gradually.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 27, 1978 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 15, 2016, the date the application was filed (20 CFR 416.920(g)).

*Id*.

On November 6, 2017, Plaintiff timely filed a request for review of the hearing decision. TR 153. On November 17, 2017, the Appeals Council issued a letter declining to review the case (TR 5-10), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then those findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III.  CONCLUSIONS OF LAW

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion

4

is undermined.  *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985),

*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age,

education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which
> significantly limits his or her ability to work (a "severe"
> impairment), then he or she is not disabled.

5

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2).  *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985).  Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized

_____

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

6

proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ improperly discounted Plaintiff's subjective complaints of pain; (2) the ALJ erred in determining that Plaintiff does not meet Listing 1.04A; and (3) claimant-supplied medical records from Dr. Cruz constitute new and material evidence. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and

7

immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Credibility and Subjective Complaints of Pain

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his subjective complaints of pain. Docket No. 16. Plaintiff alleges that the ALJ failed to "follow the SSA's procedural requirements in determining the Plaintiff's limitations due to pain." *Id.* at 18. Specifically, Plaintiff argues that the ALJ failed to follow the two-step analysis required by 20 CFR § 404.1529(c)(2), under which the ALJ must consider: (1) "whether there is objective medical evidence of an underlying medical condition"; then (2) "whether objective medical evidence confirms the severity of the alleged pain arising from the condition...or...whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* at 19. Plaintiff maintains that his diagnosis of degenerative disc disease with spondyloarthropathy serves as objective medical evidence confirming the severity of his pain. *Id.* at 20. Therefore, Plaintiff contends, the ALJ erred by failing to consider at step two:

> the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* at 19-20, *citing Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Plaintiff avers that medication and treatment were ineffective in treating his pain, and that all examining physician opinions indicate that Plaintiff was disabled by neck pain. *Id.* Therefore, Plaintiff maintains that the ALJ's adverse credibility determination was not supported by substantial evidence because all evidence in the record supports Plaintiff's reports of disabling pain. *Id.*

Defendant responds that the ALJ's conclusion that Plaintiff's subjective complaints were not entirely consistent with the record was supported by substantial evidence and consistent with SSA regulations and agency policy. Docket No. 19. Defendant argues that the ALJ thoroughly documented his consideration of Plaintiff's medical records and noted inconsistencies throughout the record that detracted from Plaintiff's complaints. *Id.* Specifically, Defendant notes that the ALJ found inconsistencies in Plaintiff's reports about the onset of his symptoms, his "reported use of illegal substances, a lack of primary care treatment, activities, stated improvement with treatment, inconsistencies in cervical symptoms, [and] a history of continuing to work with similar complaints." *Id.* at 9. Therefore, Defendant maintains, the ALJ was correct in discounting Plaintiff's complaints of pain and testimony about his limitations because said claims were inconsistent with the medical evidence in the record. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined

> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S.

Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("statements about your pain or other symptoms will not alone establish that you are disabled . . .

."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if

the subjective allegations, the ALJ's personal observations, and the objective medical evidence

contradict each other.").  Moreover, "[a]llegations of pain . . . do not constitute a disability,

unless the pain is of such a debilitating degree that it prevents an individual from participating in

substantial gainful employment."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,

1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage, and effect of medication; and the other

treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d at 1039*, construing* 20 CFR

§ 404.1529(c)(2).  After evaluating these factors in conjunction with the evidence in the record,

and by making personal observations of the claimant at the hearing, an ALJ may determine that a

claimant's subjective complaints of pain and other disabling symptoms are not credible.  *See,*

*e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of*

*Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health &*

10

*Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar considered Plaintiff's testimony and his subjective complaints as follows:

> Ms. Jacquline Rinehart assisted the claimant in preparing a function report...in December of 2016 (See Exhibit 4E). In that report, the claimant cited intractable neck and left arm pain that he asserted limited his use of his left arm severely. He also asserted that he could not bend or squat without experiencing severe pelvic pain. In addition, the claimant identified problems associated with fatigue that he stated prevented him from completing even one or two hours of work without experiencing debilitating exhaustion. Finally, he indicated that he had problems staying on task and dealing with being in public. He described his daily routine as entailing waking up, showering, resting, eating breakfast, taking his medications, napping, eating lunch, doing some chores, feeding his pets, doing laundry, resting again, eating dinner, taking his medication, resting again and then going to bed to sleep for about ten hours. He acknowledged engaging in pet care and stated that his friends made sure he had food and pet supplies. He stated that he had a hard time dressing due to his inability to lift his left arm. The claimant indicated that he engaged in simple meal preparation, took out the trash, did laundry and mowed on a riding mower (if it was not too hot outside). The claimant asserted that he no longer drove because he could not turn his head. He shopped for personal and household needs and enjoyed watching sports. The claimant indicated that he watched his children play sports two or three times a month, but he stated that he could no longer play or coach sports himself. The claimant indicated that he lacked financial resources to pay bills and maintain a bank account. He cited problems with lifting, squatting, bending, reaching, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, using his hands and getting along with others. He asserted that he could hold a maximum of five pounds with his damaged left upper extremities. The claimant estimated that he could walk about 20 yards and would then need five minutes of rest before continuing. He felt he could pay attention for ten to fifteen minutes and stated that he could not follow instructions well. Finally, he asserted that he could not handle stress or changes well and that he was prone to panic attacks.

11

The claimant submitted a second function report in April of 2017. (See Exhibit 14E). In this report, he cited his neck problems again and stated he had now lost *all use* of his left arm. He elaborated that his discs from C3 through C7 were so damaged that he had developed paralysis on the entire left side of his body and that any additional damage would cause more paralysis. The claimant also cited liver disease that he stated caused fatigue and problems with digestion. His description of his daily routine was essentially the same as in his previous report, but he wrote that his girlfriend had taken over all of the pet care. The claimant wrote that he had trouble dressing and often needed assistance, that he required someone to be there when he bathed in case he became dizzy and fell, and that he sometimes became dizzy on the toilet as well. He asserted that he no longer had the energy to cook and worried that his general state of confusion would result in leaving the stove on. The claimant stated that he went out infrequently due to fear of falling, panic attacks and extreme social anxiety. He wrote that he could not manage money or pay his bills independently. Watching television and sports were the only pastimes he acknowledged. He cited problems with lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, using his hands and getting along with others. He stated further that he could not even lift a gallon of liquid, that he was unsteady and experienced pain in all positions due to his history of injuries and side effects from medications. He felt he could walk 30 feet and would then need to rest a few minutes before continuing. The claimant estimated that he could pay attention for 30 to 45 minutes and stated that he could follow written instructions but had trouble with spoken ones. The claimant cited panic attacks in the face of stress and a fear of change. He concluded by stating that, without treatment, his liver problems would develop into liver cancer and cirrhosis and that they had already caused kidney damage involving three kidney stones. He cited confusion and the inability to complete tasks due to his emotional issues and stated that his conditions were growing much worse as time passed.

The claimant testified that he was forced to stop working due to kidney stones, for which he had required multiple surgeries, and neck problems that have resulted in paralysis in his left arm. He stated that his kidney ailment(s) has left him with constant weakness and pain. He testified that he was advised to have

surgery on his neck but cannot yet afford it and has relied on
steroid injections instead. The claimant also cited hepatitis C
infection, for which he has not had treatment. He asserted that this
condition causes digestive pain, sweating and fatigue. He stated
that his fatigue limits him to one hour of activity at a time. The
claimant indicated that he has had inadequate care for his problems
because he lacks health coverage. In addition to his physical
problems, the claimant identified anxiety and depression as
conditions that inhibit his ability to function. He asserted that, in
spite of medications and mental health counseling, he experiences
one or two panic attacks a day during which he has shortness of
breath and dizziness. He also stated that he takes medication for
hypertension that he believes contributes to his dizziness. The
claimant testified that his neck and left arm problems date back to
2010 but worsened significantly after a fall in 2012 in which he hit
his head. The claimant also cited stents in his kidney that he stated
cause constant pain and prevented him from standing straight up at
times. According to the claimant, chronic kidney stones cause him
to hunch in pain every day. The claimant elaborated that his left
arm is essentially paralyzed now and that it has been since 2015.
He stated further that he drops things and can only lift his arm a
few inches and not to shoulder-level. The claimant acknowledged
that a physician he saw regarding his hepatitis infection spoke to
him about his marijuana use and advised him that he could not get
treatment until he stopped. He testified that he no longer uses
marijuana, but the doctor retired so he still has not gotten
treatment. Finally, the claimant stated that he cannot drive, do yard
work or housework and that he has a hard time dressing. He stated
further that he cannot stand up for even 20 minutes and spends
most of his time in a recliner, watching television.

TR 21-23, *referencing* TR 195-204, 235-42, 37-53.

The ALJ ultimately found that Plaintiff's medically determinable impairments could
reasonably be expected to cause some of the symptoms he alleged, but that Plaintiff's statements
concerning the intensity, persistence and limiting effects of his symptoms were not entirely
consistent with the evidence in the record. TR 23. The ALJ explained his rationale for so
finding as follows:

13

The origins and histories of the claimant's physical ailments are somewhat confusing. Although the claimant asserts that his neck and arm problems date back to 2010 and were made significantly worse by a fall in 2012, his medical records are not entirely consistent with his account. Those records include hospital records from Cookeville Regional Medical Center (Cookeville Regional) that show the claimant was in a car accident in May of 2012, after which he complained of neck pain. (See Exhibit 6F). In June, the claimant reported to his caregivers at the health department that he had injured his neck doing yard work. (See Exhibit 2F). This marks the first mention by the claimant of upper extremity problems, including numbness in his left hand without any restrictions to his ranges of motion or strength. Notably, the claimant was using multiple substances during this period as well, including intravenous (IV) Suboxone, benzodiazepines and marijuana. (See Exhibit 6F). He was also diagnosed with hepatitis C for the first time in August of 2012. (See Exhibit 2F). Despite evidence of IV drug use in December of 2012 (with loss of consciousness and a fall in which the claimant apparently hit his head), the claimant reported to the health department in February of 2013 that he had been clean from IV drug use for six months. He did not return for primary care treatment at the health department until over two years later, in September of 2015.

The claimant continued to seek treatment at the emergency room, however. He called EMS due to an alleged seizure, during which he stated that had [*sic*] hurt his neck, in June of 2013. (See Exhibit 6F). A CT of his cervical spine showed degenerative changes at C3-4, C4-5, C5-6 and C6-7 with posterior disc osteophyte complexes, varying degrees of bony neuroforaminal narrowing and well aligned facet joints. He returned to Cookeville Regional for several more acute complaints, including a migraine in June of 2013; flank pain (due to a kidney stone) in August of 2013; injuries to his left hand in October of 2013 from dropping a concrete block on it (with normal x rays); abdominal pain in April of 2014 (due to possible kidney stones); a drug overdose in May of 2014; right knee pain in April of 2014[3] (due to an injury sustained *while running, playing softball*); flank pain in October of 2015 (due to additional kidney stones, prompting right-sided stent

---

[3] The record indicates that Plaintiff complained of right knee pain in April of 2015. TR 447-51. The ALJ's statement that this occurred in 2014 appears to be a typographical error resulting in a misstatement that is not material to the issues before the Court.

placement); and multiple additional kidney stones in December of 2015. He also sought care at Livingston Hospital for flank pain on several occasions in 2015. (See Exhibit 15F). Testing showed that his stents were in good position.

As mentioned, the claimant returned for primary care at the health department in September of 2015, citing concerns regarding hypertension, hepatitis C, abdominal pain, blurred vision, dizziness and depression. (See Exhibit 2F). He indicated that he was going to Plateau Mental Health for mental health care. He returned the following month with the same concerns, also citing fatigue and nausea. In December, he cited tooth problems, including broken teeth and dental caries.

The claimant's bouts of kidney stones also prompted urology treatment in November of 2015. (See Exhibit 3F). At that time, he requested the removal of his stents and stated he would return when he had insurance. He stated that he had no dysuria, bladder pain or hematuria at that point. Six weeks later, he had additional stones (as indicated above) and underwent right ureterorenoscopy and laser stone fragmentation with removal and stent replacement.

Treatment notes from the health department represent the only information about the claimant's health status until the last quarter of 2016 (See Exhibit 2F). Those notes show stable weight that ranged from 147 pounds in September of 2015 to a low of 139.6 pounds in November of 2016. They also reflect stable blood pressure with normal or mildly elevated readings.

In September of 2016, the claimant was examined by Dr. Venkata Tammana, a gastroenterologist, regarding his hepatitis C infection. (See Exhibit 5F). The claimant acknowledged past drug use but stated that he had been clean since 2010 (notwithstanding information to the contrary) other than ongoing daily marijuana use. He cited intermittent gastrointestinal problems, including nausea and vomiting and lower abdominal pain. Dr. Tammana noted normal gait and station, as well as normal muscles and joints. He advised the claimant that he could not start hepatitis C treatment until he stopped using marijuana and directed him to return in March of 2017 for next steps, once total abstinence was achieved.

15

The claimant returned to the health department in November of 2016 and reported that he was not happy with Dr. Tammana's care. (See Exhibit 2F.) He continued to complain about fatigue and stated that any effort to do housework left him incapacitated for two days. Notably, he later reported to caregivers at Satellite Medical Urgent Care and Family Practice that he had seen a doctor for hepatitis C treatment but that the doctor did not want to help him when he found out the claimant had no insurance. (See Exhibit 14F.) He seemed to insinuate something similar during his testimony. These assertions are not supported by Dr. Tammana's treatment notes, however.

The claimant also attended an intake appointment at Volunteer Behavioral Health Center (also referred to as "Plateau" in the record) in November of 2016. (See Exhibits 1F and 9F.) He indicated to the intake person that he was "freaking out" due to depression, anxiety and panic. He had not had any mental health care in three years. The claimant estimated that he slept six to seven hours a night due to his need to get up and urinate and cited constant shortness of breath, worry, irritability, and a possible history of sexual assault (which is not mentioned elsewhere in the record) and paranoia and gave a vague account of possible hallucinations involving plots by his girlfriend and her kids against him (that he stated he knew were not real). He acknowledged a history of dependence on alcohol and Xanax but denied any other type of substance abuse other than his current, daily use of marijuana (to stimulate his appetite) and use of Celexa (when he could get it). The claimant's affect was anxious, but his thoughts were organized, his memory, insight, and judgment were good, and he demonstrated fair concentration. The claimant indicated to his case manager that he could not work due to his liver problems, which he stated had induced him to lose 30 pounds recently. In December, the claimant reported that Celexa and clonidine were helping his emotional state and that he continued to smoke marijuana daily. He stated further that his appetite was improving.

In December of 2016, the claimant also reported (to Satellite Medical) that his ureteral stents hurt sometimes when he moved in certain ways. He stated further that he had lost 20 pounds in the past year. (See Exhibit 14F.) The claimant went to the health department for one of his final visits there of record in January of 2017. He was doing well on his blood pressure medications and weighed 142 pounds. (See Exhibit 11F.)

16

The claimant underwent a consultative examination in February of 2017 by Dr. Terrence Leveck. (See Exhibit 7F). He reported to Dr. Leveck that he had experienced cervical pain that radiated into his left arm since 2012. He also cited hepatitis C, anxiety, depression, hallucinations, hypertension, GERD with dyspepsia, anemia, and weight loss of 20 pounds over the past two years. The claimant stated that he had worked in construction until 2015 and that his work had entailed lifting 50 to 60 pounds. He stated that he was fired because he could no longer lift. He also cited kidney surgeries in 2013, 2015 and 2016. The claimant's vision was essentially normal. The claimant had normal grip and pincer strength bilaterally and normal wrist strength. His right elbow strength was normal, but his left elbow flexion strength was 3/5, and his extension strength was 4/5. His right shoulder strength was intact but, on the left, it was 3/5 with elevation and 4/5 with abduction. There was left deltoid and biceps atrophy. The claimant's touch sensation was normal, and Romberg testing was negative. The claimant's cervical ranges of motion were limited, as were his ranges of motion in his shoulders, hips and thoracolumbar spine. All other ranges of motion were normal. His gait and station were normal, and he could perform tandem and toe walking without difficulty and heel walking with moderate problems. The claimant could stand on each leg individually and squat halfway to the ground.

The claimant also underwent a psychological examination in February of 2017 by Dr. Linda Blazina. (See Exhibit 8F). The claimant had logical and coherent thought processes and indicated that, although he sometimes felt others were plotting against him, he knew this was not really true. He stated further that he avoided contact with others, felt guilty, worthless and hopeless and experienced agitation and bouts of panic that caused shortness of breath. The claimant's recall and memory were intact, but his attention and concentration were somewhat compromised due to preoccupation. He would not attempt to spell "world" backwards and did not do well on serial 7s. His performance on mental status tasks suggested low average intellectual functioning. The claimant stated that he had not used drugs (other than marijuana) in over eight years. He acknowledged dressing and bathing regularly (with some assistance due to his left arm ailments), doing some laundry, caring for pets and going to his girlfriend's children's sporting events. He no longer drove because he had lost his driver's license due to unpaid child support. The claimant stated that he had no

17

friends but acknowledged that he saw his daughter and sometimes watched television. He stated, however, that he spent most of his time secluded in a dark room.

The claimant attended a few more sessions at Volunteer Behavioral Health in 2017 without much additional information. (See Exhibits 12F and 16F.) He did not have time for a scheduled assessment in February of 2017 and became upset during another appointment because he was dissatisfied with efforts to obtain pain medication (which he had been informed would not be provided by Satellite Medical). Apparently, he had become upset with his case manager a few weeks before and stated a desire to change to a different treatment provider because she did not know specifics about a gastroenterology referral. Additional records reflect that he continued to take Celexa and use marijuana and indicated that, as of May of 2017, he was doing well on his medication and sleeping well, with a good mood and healthy appetite. (See Exhibit 18F.)

Medical treatment notes from this period continue to show stable weight and complaints about neck and arm pain. (See Exhibit 13F.) Notably, they do not reflect complaints about chronic abdominal or pelvic pain or any problems with urinary issues. An ultrasound of the claimant's liver conducted in early 2017 was unremarkable, as was a CT scan. (See Exhibits 14F and 15F.) He continued to have left biceps atrophy with 4/5 left-sided grip strength. An MRI in June of 2017 revealed that C2-3 was normal; at C3-4, there was no herniation, but the claimant had mild neuroforaminal narrowing; there was posterior osteophyte at C4-5 on the left with mild to moderate neuroforaminal narrowing, patent right neural foramen and no central canal stenosis; and there were large posterior osteophytes at C6-7 that caused moderate central canal stenosis, mild neuroforaminal narrowing on the right and moderate neuroforaminal narrowing on the left. (See Exhibit 19F.) A final treatment note from the health department in August of 2017 reflects stable weight and some concerns about loss of left upper extremity strength, with good grip strength and some limitations to the claimant's cervical range of motion.

As the forgoing [*sic*] discussion demonstrates, the claimant has some demonstrable cervical degeneration and loss of strength in the upper part of his left upper extremity. His allegations of total loss of use of his arm, complete left arm paralysis and almost complete left-sided paralysis, as well as accounts of doctors'

18

warning that any additional cervical damage would like [*sic*] lead to more paralysis are not consistent with the medication evidence [*sic*]. The physical examinations of record suggest that he has diminished strength and muscle tones in the claimant's left deltoid and biceps with intact wrist and (on most occasions) intact grip and pincer strength. Further, the claimant indicated that he continued to work construction, lifting 50 to 60 pounds, until 2015, a pursuit that his [*sic*] inconsistent with his present account of his arm problems and their history. By all accounts, his gait and station apparently remain intact, rendering his accounts [of] his ability to walk inconsistent with medical evidence as well. Although the record shows that the claimant experiences [*sic*] chronic problems with kidney stones in the past, it appears that, as of the insertion of the right stent in late 2015 by Dr. Moore, those problems have largely resolved, with very few complaints of flank pain since then. The claimant's assertions of constant abdominal/pelvic pain from the stents that prevents him from standing up straight and/or bending are not consistent with treatment records. As discussed above, although the claimant remains of thin body build, there is no indication that he had undergone dramatic weight loss in the past few years as he asserts. Further, testing of the claimant's liver fails to support that his hepatitis C has progressed to cause debilitating liver damage (or kidney damage), and the claimant's failure to avail himself of available treatment (apparently due to his desire to continue to use marijuana) undermines his allegations of severe problems/pain from this condition. Finally, there is very little information regarding the claimant's mental health allegations. It appears that he decided to return for mental health treatment in 2016, after a three-year hiatus from treatment. Records from his mental health care reflect his frustrations regarding his lack of access to medical referrals and narcotic pain medication, his ongoing use of marijuana and his recent account that Celexa was helping with his mood, his appetite and the quality of his sleep.

TR 23-27, *referencing* TR 275-90, 304-11, 318-27, 330-59, 386-484, 509-41, 562-92, 605-609, 627-40, 643-55, 690-718, 722-25, 734-745, 749-54, 779-839.

As can be seen, the ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these

19

factors were considered. TR 21-28. The ALJ's detailed articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

Contrary to Plaintiff's assertions, once the ALJ found evidence that Plaintiff had the underlying medical conditions of "cervical degeneration and loss of strength in the upper part of his left upper extremity" (TR 26), the ALJ then fully considered Plaintiff's daily activities, references to Plaintiff's pain in his medical records, the effectiveness of treatment and medication, and whether Plaintiff's complaints were corroborated by objective medical tests. TR

20

16-29; *see also Felisky v. Bowen*, 35 F.3d at 1039. After consideration of the full record, the ALJ

found that the medical evidence of record does not show that Plaintiff's medical condition is of

such a severity that it could reasonably be expected to produce the disabling pain Plaintiff

reports. TR 16-29. The ALJ supported his conclusions with substantial evidence, just as 20 CFR

§ 404.1529(c)(2) and the Sixth Circuit precedent cited by Plaintiff mandate. Docket No. 16.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ

ultimately determined that Plaintiff's testimony about the severity of his pain was not credible,

and that Plaintiff's resulting physical limitations were less severe than he claimed. TR 16-29.  In

making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical

records, and reached a reasoned decision; the ALJ's findings are supported by substantial

evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.

Therefore, this claim fails.

**2.  Finding that Plaintiff Did Not Meet or Equal a Medical Listing**

Plaintiff contends that the ALJ erred in his failure to find that Plaintiff did not have an

impairment that met or medically equaled the severity of 20 CFR Pt. 404 Subpt. P. App. 1,

§ 1.04A ("Listing 1.04A"). Docket No. 16. Plaintiff notes that Listing 1.04A is met if:

> there is a disorder of the spine (degenerative disc disease), resulting
> in compromise of a nerve root or the spinal cord, with evidence of
> nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine and motor
> loss...accompanied by sensory or reflex loss.

*Id.* Plaintiff argues that the results of Dr. Leveck's February 2017 consultative evaluation showed

that Plaintiff had cervical pain, weakness in the left shoulder and elbow, and muscle atrophy in

his left arm and shoulder. *Id.*, *citing* TR 628-32. Plaintiff maintains that these findings show that

21

Plaintiff meets Listing 1.04A when they are considered in combination with the results of subsequent X-rays and MRI scans showing, *inter alia*, degenerative changes, neuroforaminal encroachment, and spondyloarthropathy of C3-C7, and a treatment note documenting an assessment of cervical radiculopathy, numbness and tingling in the left arm, and arm pain. *Id.*, *citing* TR 687, 749-54, 715-17, 840.

Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirements for Listing 1.04A. Docket No. 19. Defendant maintains that the ALJ considered whether Plaintiff's allegations of cervical degeneration met the listing requirements and ultimately found that the evidence in the record indicated that Plaintiff's "cervical condition in his left shoulder and upper arm falls short of meeting or equaling the criteria of the relevant listing." *Id.* at 4. Defendant notes that the introductory portion of the musculoskeletal system listings requires that, in order to meet the terms of a listing, the impairment must present listing criteria on a continual basis for at least twelve months, must render the claimant unable to effectively perform fine and gross movements on a sustained basis, and must be "established by a record of ongoing management and evaluation." *Id.*, *citing* 20 CFR Pt. 404 Subpt. P. App. 1, §§ 1.00(B)(2)(a), 1.00D, 1.00E. Defendant contends that Plaintiff does not meet these criteria because he retained normal use of his left arm and hand with full range of motion, and the record only contains intermittent complaints of his symptoms. *Id.* Defendant maintains that substantial evidence in the record supported the ALJ's findings that Plaintiff did not meet the criteria of Listing 1.04A, and that therefore, the ALJ's decision should be affirmed. *Id.*

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of his impairments to determine whether he meets or equals a relevant listing. 42 U.S.C.

22

§ 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. Instead, Plaintiff simply maintains that the ALJ is bound to find that Plaintiff meets Listing 1.04A based on medical images showing some cervical degeneration, combined with Plaintiff's subjective complaints of pain, numbness, and weakness. Docket No. 16.

The ALJ, after evaluating all of the medical, vocational, and testimonial evidence, determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. TR 19-29. In making this determination, the ALJ specifically noted, *inter alia*, that the record does contain some evidence supporting "the existence of cervical disc disease with some levels of upper left arm weakness." TR 19. The ALJ also noted, however, that the consultative examination conducted by Dr. Terrence Leveck indicates that Plaintiff retains normal sensation in his left arm and hand, retains the use of his fingers and both hands, and has full ranges of motion in his elbows and wrists. *Id.*, *referencing* TR 628-31. Consequently, the ALJ determined that Plaintiff's condition does not meet or equal the criteria of the relevant listing. *Id.* The rationale in the ALJ's decision specifically addresses the medical evidence, as well as Plaintiff's testimony and subjective claims of numbness and pain, clearly indicating that these impairments were considered. *Id*.

In claiming that the ALJ must find that Plaintiff meets Listing 1.04A merely because there is *some* evidence of impaired function in his left upper extremity, Plaintiff misinterprets the requirements of 20 CFR § 416.920(a)(4)(iii). Defendant correctly notes that, in order to meet a specified listing, a claimant's condition must meet *all* of that listing's criteria. Docket No. 19, *citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The requirements of Listing 1.04A are as follows:

1.04    Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 CFR Pt. 404, Subpt. P, App. 1, § 1.04A.

The ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled Listing 1.04A is supported by Dr. Leveck's consultative examination, which showed that Plaintiff retained 3/5 elbow flexion strength in his left arm and normal touch sensation in his hands. TR 630. Although medical records indicate that Plaintiff did experience some loss of strength, atrophy, and cervical degeneration, the ALJ correctly noted that most of Plaintiff's primary care treatment in 2015 and 2016 was for other health concerns. TR 24-25. In August 2017, Plaintiff visited the health department complaining of weakness in his left arm, neck stiffness, and pain, and while the examining physician found that he had decreased strength in his left upper extremity, Plaintiff still had equal grip strength in both hands and full extension and flexion of the neck. TR 805. The ALJ also considered the fact that Plaintiff continued to work construction jobs involving 50-60 pound lifting during the period in which Plaintiff alleges he was suffering from cervical pain. TR 26-27. Further, as discussed *supra* pp. 8-21, some of the symptoms Plaintiff alleged were inconsistent with the record; specifically, the origin of his complaints and his description of their severity were not consistent with objective

medical evidence or his own testimony.

In finding that Plaintiff's symptoms did not meet or medically equal a listing, the ALJ's articulated rationale demonstrates that the ALJ considered the record as a whole in evaluating the combined effect of Plaintiff's impairments. There is substantial evidence in the record to support the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing; the ALJ's decision, therefore, must stand.

### 3. Claimant-Submitted Evidence

On November 27, 2017, ten days after the Appeals Council denied Plaintiff's request for review (TR 5), Plaintiff visited Dr. Leonardo Rodriguez-Cruz for a neurological consultation. TR 1-4. Plaintiff subsequently submitted treatment records from Dr. Cruz with his application for review. TR 1-4. Plaintiff alleges that Dr. Cruz's records note that Plaintiff had "cervical spondylitic myelopathy with fascilations and that his condition would continue to deteriorate until a multiple level discectomy/decompression cervical fusion could be performed." Docket No. 16 at 13. Plaintiff also alleges that Dr. Cruz opined that even with surgery, Plaintiff would still lack sufficient function to return to productive work. *Id.*

Defendant's response does not address this evidence. Docket No. 19.

The Regulations provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review granted where the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence. 20 CFR § 416.1470.

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new, material evidence is available; *and* (2) there is good cause for the

failure to incorporate such evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff can show neither.

As an initial matter, Plaintiff cannot establish that the treatment records from Dr. Cruz are material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988), *citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980). Plaintiff has failed to satisfy this burden.

The records from Dr. Cruz are not substantially different from what was in the record at the time of the hearing, and contain inconsistencies that are similar to those in the remainder of the record. For example, Plaintiff reported to Dr. Cruz that he had experienced neck pain since 2015, and that the onset of symptoms was not associated by any specific event or activity. TR 1. In other records, however, Plaintiff had reported that his neck and arm problems dated back to 2010 and worsened in 2012, and that the source of the neck pain was either a motor vehicle accident or yard work. *See, e.g.*, TR 23, 43, 326, 715. Dr. Cruz's assessment was based solely on a physical examination and Plaintiff's self-reported symptoms, and there is no evidence that Dr. Cruz conducted any objective diagnostic tests to make his assessment. TR 1-4. The records submitted merely duplicate the information already in the record, and therefore do not constitute new and material evidence.

Even if the records from Dr. Cruz had been part of the record before the ALJ, "substantial evidence" supports the ALJ's findings and inferences. The ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and Vocational Expert, Rodney Caldwell,

26

observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. Additionally, the records from Dr. Cruz, when reviewed along with the record as a whole does not warrant changing the ALJ's decision. Thus, there is no "reasonable probability that the Secretary would have reached a different disposition of the disability claim" if the records from Dr. Cruz had been part of the record before the ALJ.

Moreover, Plaintiff has not established "good cause" for failing to submit evidence from Dr. Cruz to the ALJ during the hearing. Plaintiff has not established "good cause" for failing to consult Dr. Cruz until after the Appeals Council's adverse determination was issued; in fact, he offers no explanation whatsoever for his failure to do so. *See* Docket No. 16. Plaintiff has failed to demonstrate either that his new medical evidence was material or that there was good cause for his failure to present new evidence at the administrative hearing. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

                                                    _____

                                                    JEFFERY S. FRENSLEY
                                         United States Magistrate Judge

Case 2:18-cv-00008   Document 20   Filed 08/03/18   Page 28 of 28 PageID #: 959